UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

                Plaintiff,

– against –

JEAN FRANCIS ZINSOU and COLETTE
ZINSOU-FATIMABAY,

                Defendants.

**OPINION AND ORDER**

19 Civ. 7025 (ER)

Ramos, D.J.:

      On July 26, 2019, Plaintiff filed the instant action against Defendants Jean Francis Zinsou and Colette Zinsou-Fatimabay. Doc. 1. In his complaint, Plaintiff alleges that he was a victim of human trafficking and forced labor at the hands of Defendants.

      Before the Court is Plaintiff's *ex parte* motion to prosecute this action under the pseudonym "John Doe." Doc. 3. After reviewing the complaint, the moving papers, and the applicable law, Plaintiff's motion is DENIED.

## I. BACKGROUND

      The following allegations are drawn from Plaintiff's complaint and declaration in support of his motion. For purposes of this motion only, Plaintiff's allegations are accepted as true.

      Plaintiff is a native of Madagascar and the nephew of Defendant Colette Zinsou-Fatimabay. Doc. 1 ¶¶1. Ms. Zinsou-Fatimabay is married to Defendant Jean Francis Zinsou, who at all relevant times was a diplomat for the West African nation of Benin. *Id.*

      In September 2012, Plaintiff accepted an offer from Defendants to serve as Mr. Zinsou's driver in the United States. *Id.* ¶ 24. In preparation for his employment, Plaintiff procured a passport and applied for a United States tourist visa. *Id.*

The next month, Plaintiff executed an employment contract with Mr. Zinsou, pursuant to which Plaintiff was to work 40 hours per week and be paid $1,900 per month, in addition to a $160 "subservice premium." *Id.* ¶ 25. The employment contract also guaranteed, among other fringe benefits, health insurance; paid sick leave; premium compensation for overtime worked; and, after one year of employment, 30 days of vacation leave. *Id.* ¶¶ 26–28.

On March 15, 2013, Plaintiff received a G-5 visa. *Id.* ¶ 24. One month later, at the age of 30 years old, Plaintiff left his home, wife, and child in Madagascar to travel to the United States and serve as Mr. Zinsou's driver. *Id.* ¶¶ 29–30.

Plaintiff began working for Defendants in May 2013. *Id.* ¶¶ 31–32. Upon his arrival in the United States, and until his purported "escape" from Defendants' custody, Plaintiff lived in the basement of Defendants' home in the Bronx, New York. *Id.* ¶ 33. Plaintiff's work hours were relatively normal during his first month as Defendants' driver. *Id.* ¶ 34. However, after the first month, he ended up working far in excess of 40 hours per week and was often required to be available and/or driving between 7:00 a.m. and 2:00 a.m., seven days a week. *Id.* ¶ 4. He also never received time off. *Id* ¶ 39. In fact, whenever Plaintiff asked for time off, Defendants threatened to fire him and send him back to Madagascar; and they would also call his family in Madagascar to tell them that they planned to fire him for poor performance. *Id.* Moreover, while Plaintiff's employment contract stated that he worked only for Mr. Zinsou, in reality Defendants required him to drive them both whenever and wherever they requested. *Id.* ¶ 34.

Notwithstanding the lengthy hours he worked for Defendants, they never paid him the statutory minimum wage, overtime compensation, or spread-of-hours pay. *Id.* ¶ 4. Moreover, Mr. Zinsou was often "aggressive" with Plaintiff in the car if, for example, Plaintiff refused to disobey the speed limits. *Id.* ¶ 35. As a result of Plaintiff's long hours and stressful work

environment, he developed blurry vision, increased anxiety, diabetes, and other medical issues. *Id.* ¶¶ 38, 42–46.

Plaintiff's G-5 visa was set to expire on April 28, 2016. *Id.* ¶ 49. Three months prior to his visa's expiration date, Plaintiff asked both Mr. Zinsou and the Head of Chancery for the Permanent Mission of the Republic of Benin to the United Nations ("the Mission") to ensure his immigration status remained up to date, but each person insisted that Plaintiff's visa renewal was the other person's responsibility. *Id.* After Plaintiff requested repeatedly that Mr. Zinsou ensure his lawful immigration status, Mr. Zinsou informed him that his G-5 visa would not be renewed. *Id.*

At some point thereafter, Plaintiff was informed by an officer with the Mission that the Mission would attempt to change his immigration visa from a G-5 to a G-1 and that, going forward, Plaintiff would be employed by the Mission directly, rather than by Mr. Zinsou. *Id.* Around that same time, Mr. Zinsou insisted that Plaintiff sign a new employment contract that listed the Mission as Plaintiff's sole employer and provided that Plaintiff would be a driver for members of the Mission and other officials. *Id.* ¶ 50.

Notwithstanding Plaintiff's repeated requests to ensure his lawful immigration status, the Mission and Defendants did not apply for a change in Plaintiff's immigration status until May 2016—approximately one month *after* his G-5 visa expired. *Id.*

On June 7, 2016, the United States Mission to the United Nations denied Plaintiff's G-1 visa application on grounds that Plaintiff needed to return to Madagascar first if he wished to change his visa from a G-5 to a G-1. *Id.* 51. Plaintiff believes that Mr. Zinsou's insistence that Plaintiff change his visa directly resulted in his failure to secure a new visa. *Id.*

On July 26, 2016, Plaintiff filed a minimum wage/overtime complaint as a domestic worker with the New York State Department of Labor. *Id.* ¶ 52. Mr. Zinsou responded by firing Plaintiff via letter one month later. *Id.*

On July 26, 2019, Plaintiff filed the instant suit against Defendants, in which he accuses them of violating the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. §§ 1589, 1590, 1595; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and a bevy of New York Labor laws. Doc. 1. Plaintiff also accuses Defendants of breach of contract and several torts, including fraudulent misrepresentation and intentional infliction of emotional distress. *Id.* The instant motion, in which Plaintiff seeks leave to proceed using a pseudonym, was filed on the same day. Doc. 3.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). As other courts in this circuit have recognized, "[r]equiring a plaintiff to place his or her name on the complaint serves the constitutional goal of enabling public monitoring of the courts: The press and public can hardly make an independent assessment of the facts underlying court cases, or even assess judicial impartiality or bias, without knowing who the litigants are." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006).

Notwithstanding the well-recognized "right to know" the identities of litigants involved in the court system, *Sealed Plaintiff*, 537 F.3d at 189, it is also true that "without vigilance, court[] files might become a vehicle for improper purposes," *Brown v. Maxwell*, 929 F.3d 41, 47

(2d Cir. 2019) (internal quotation marks omitted). Indeed, the Second Circuit has observed recently that "[o]ur legal process is already susceptible to abuse," and "[u]nfortunately, the presumption of public access to court documents has the potential to exacerbate . . . harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record." *Id.* Thus, "when determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189. "[T]his balancing of interests entails the consideration of several factors," including the following non-exhaustive list:

(1) whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or, even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

5

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189–90 (internal quotation marks, citations, and alterations omitted). "Of course, a district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191 n.4.

III. **DISCUSSION**

In his moving papers, Plaintiff concedes that, of the factors listed above, factors (3), (5), (9), and (10) are either irrelevant or unpersuasive here. Doc. 4 at 1. Consequently, in the following section, the Court addresses only the remaining six factors.

A. **The litigation does not involve matters highly sensitive and of a personal nature.**

The Court begins by considering whether the litigation concerns matters that are highly sensitive and of a personal nature, such that Plaintiff's continued anonymity is warranted. Plaintiff argues that human trafficking cases are, in all cases, "highly personal and susceptible to social stigmatization." Doc. 4 at 3. The Court cannot agree.

As a preliminary matter, the Court finds that the cases cited by Plaintiff to support his argument miss their mark. For example, Plaintiff cites *Doe v. New York University*, 786 N.Y.S.2d 892, 903 (Sup. Ct. 2004), for the proposition that while "[e]mbarassment or economic harm to the plaintiff[] is insufficient," the risk of "social stigmatization" is a compelling factor to consider in deciding whether continued anonymity is warranted. Doc. 4 at 3. However, *Doe v. New York University* is distinguishable from this case, as that case involved plaintiffs who were alleged victims of sexual assault, and "[h]istorically, an exaggerated concern for female chastity and a regrettable inclination to blame the victim for sexual assaults, along with society's general respect for sexual privacy, have resulted in an atmosphere in which victims of sexual assault may experience shame or damage to reputation," *Del Rio*, 241 F.R.D. at 159. Consequently, courts

6

have often granted pseudonymity solely (or in large part) because of the "sensitive nature of, and stigma attached to, the subject matter in certain cases." *Id.* & n.10 (collecting cases).

Here, in contrast to *Doe v. New York University*, while Plaintiff alleges serious wrongdoing on Defendants' part, he does not allege tortious conduct of a sexual nature. Thus, *Doe v. New York University* cannot carry the weight he attempts to place thereon.

The other cases Plaintiff cites in support of his argument fare no better, as each case involved plaintiffs who were either *sexually* trafficked, minors,[1] or both. *See Fla. Abolitionist, Inc. v. Backpage.com LLC*, No. 17 Civ. 218 (TBS), Doc. 46 at 2–4 (M.D. Fla. May 18, 2017) (granting request to proceed anonymously where plaintiff, a victim of *sexual* trafficking, alleged that defendants created "online content designed to facilitate sex trafficking and . . . exploitation of children for sex," and some of plaintiff's alleged abuse occurred while she was a *minor*); *Doe v. Penzato*, No. 10 Civ. 5154 (MEJ), 2011 WL 1833007, at *1, 3 (N.D. Cal. May 13, 2011) (granting request to proceed anonymously where plaintiff alleged that she was subject to human trafficking and *sexual* battery, and noting that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes"); *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988 (S.D. Ind. 2007).[2]

---

[1] It is well recognized that there exists "a strong public policy interest favoring the special protection of minors and their privacy where sensitive and possibly stigmatizing matters are concerned." *Alicia B. ex rel. Cynthia B. v. Malloy*, No. 16 Civ. 65 (SRU), 2016 WL 9782480, at *1 (D. Conn. Dec. 20, 2016) (quoting *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1375 (8th Cir. 1990)); *accord Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (noting that "[c]ourts have been readier to protect the privacy of infant plaintiffs than of adults, whether because children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation" (citation omitted)).

[2] *John Roe* is even more inapt than the other cases cited. First, while Plaintiff describes *John Roe* as a case in which the district court in the Southern District of Indiana "grant[ed] petition[s] of workers of a rubber plantation to bring labor trafficking and forced labor claims under pseudonyms," *see* Doc. 4 at 4, the Indiana district court did no such thing. Instead, in the opinion cited by Plaintiff, the Indiana district court noted only that the plaintiffs had *previously* been granted leave to proceed under pseudonyms by a district court in the Central District of California—the district in which the plaintiffs originally filed the action. *See John Roe*, 492 F. Supp. 2d at 991. And a review of the plaintiffs' application to the California district court reveals that plaintiffs premised their application on the following facts: (1) all plaintiffs were current laborers on the plantation owned and operated by defendants; (2) all

7

In contrast to the cases above, Plaintiff's trafficking allegations involve neither sexual misconduct nor minors. And while there may be cases where the sensitive or personal nature of the conduct at issue is so great as to justify anonymity without a specific showing of harm or likely social stigmatization, this is not one of those cases. Instead, this case is far more analogous to the scores of FLSA and immigration cases pending in this district, in which plaintiffs prosecute their claims using their real identities. And while Plaintiff fears harm to his "reputation and judgment," and believes that he will be stigmatized in his community as "ungrateful for coming to the United States and not hardworking enough to provide for [his] family" if his identity were revealed, *see* Doc. 5 ¶ 9, such stigma is insufficient to justify continued anonymity. *Cf. Doe v. Fullstack Acad., Inc.*, No. 18 Civ. 08070 (ER), 2018 WL 4868721, at *2–*3 (S.D.N.Y. Oct. 5, 2018) (collecting cases and denying motion to proceed anonymously in ADA where plaintiff alleged "social stigmatization" resulting from disclosure of "fairly common disabilities"); *Doe I v. Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (concluding that risk of ridicule or loss of employment upon disclosure of identity of defendant accused of writing derogatory comments posted online anonymously did not justify use of pseudonym because mere "social stigma, embarrassment, and economic harm" are not the "special harms" required to proceed anonymously).

---

plaintiffs were completely dependent on defendants for their livelihoods and would face certain economic and violent reprisals if their identities were revealed publicly; and (3) some plaintiffs were minor children. *See Flomo v. Bridgestone Americas Holdings, Inc.*, No. 06 Civ. 627 (JMS), Doc. 2–4 (S.D. Ind. filed Apr. 19, 2006). None of those circumstances is present here. Moreover, three years later, the Indiana district court revisited the California district court's order and ultimately concluded that continued anonymity was unwarranted given that some of the minor plaintiffs had since become adults and their names had become widely known. *Flomo*, Doc. 194 at 1.

The Court finds troubling Plaintiff's reliance on the decision in *John Roe* without noting (1) that the Indiana court did not, in fact, grant the order to proceed anonymously and (2) that the order granting leave to prosecute anonymously was ultimately rescinded.

Nor is the fact that Plaintiff developed "chronic medical conditions, including diabetes, and suffered severe emotional distress" as a result of Defendants' conduct, *see* Doc. 5 ¶ 4, enough to convince the Court that risk of social stigmatization resulting therefrom is so great as to warrant use of a pseudonym. *See Fullstack Acad.*, 2018 WL 4868721, at *2–*3; *Rankin v. N.Y. Pub. Library*, No. 98 Civ. 4821 (RPP), 1999 WL 1084224, at *1 (S.D.N.Y. Dec. 2, 1999) (collecting cases and denying motion to proceed anonymously where "there [wa]s no evidence in the record that a social stigma [wa]s attached to [p]laintiff's medical conditions in the same manner that one is attached to other medical conditions, such as AIDS").

**B.    The risk of future retaliatory harm to Plaintiff and his family resulting from disclosure of his identity is moot.**

The Court considers next whether Plaintiff's identification poses a risk of retaliatory physical or mental harm to him or, even more critically, to innocent non-parties, such as his wife and minor child. In support of his motion, Plaintiff alleges that he and his family have suffered severe retaliatory harassment in the past from Defendants. Doc. 4 at 4. Specifically, he claims that while he worked for Defendants, "they repeatedly threatened to ruin his reputation in Madagascar by telling people there that he was a bad worker." *Id.* at 5. He claims that Defendants also called his family and made similar threats. *Id.* And, finally, he claims that Defendants once threatened to involve Beninese military leadership into a dispute with him over ownership of a cellphone, and that Defendants' expressed willingness to use that power against him creates a "greater possibility" that harm will befall him, or his family, should his identity be revealed in a public filing. *Id.*

Plaintiff's argument makes no sense. Plaintiff concedes, as he plainly must, that Defendants already know his identity. Doc. 4 at 6. Indeed, he is their former longtime driver and one of their nephews. Thus, continued anonymity will not serve to protect him from any

9

retaliatory conduct directed by Defendants because Defendants will know his identity as soon as they receive notice of his complaint. *See Del Rio*, 241 F.R.D. at 158 n.7 ("[I]f a plaintiff specifically fears retaliation by defendants or their associates, prior disclosure to the defendants of the plaintiff's identity might moot any request for anonymity.").

## C. Plaintiff is not particularly vulnerable to the possible harms of disclosure.

Plaintiff argues that he is particularly vulnerable to harms resulting from disclosure of his identity because his wife and young child reside overseas, and Defendants may attempt to retaliate against him, either directly or indirectly. However, for the reasons just explained, the Court finds Plaintiff's argument moot.

## D. Plaintiff's identity, while omitted from his complaint, is nonetheless discernible.

A plaintiff's interest in anonymity is weakened where anonymity has already been compromised. *See id.* at 158. Here, of course, Plaintiff's name has not yet been revealed in any public court filings. However, although Plaintiff omitted his name from his pleadings, he has nonetheless included enough identifiers to make his identity easily discernible to Defendants. Moreover, while Plaintiff's identity has thus far been kept confidential from the general public, "that in itself is not a reason to permit anonymity; it is, at best for the plaintiff[], a neutral fact." *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Local 14-14B v. Angel Constr. Grp., LLC*, No. 08 Civ. 4760 (JO), 2009 WL 6047130, at *4 n.2 (E.D.N.Y. Sept. 8, 2009), *report and recommendation adopted sub nom. Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Local 14-14B v. Angel Corp. Co.*, No. 08 Civ. 4760 (SJ), 2010 WL 932337 (E.D.N.Y. Mar. 11, 2010).

### E. The public's interest is furthered by requiring disclosure of Plaintiff's identity.

The Court next considers whether the public's interest in the litigation is furthered by requiring Plaintiff to disclose his identity. The duality of the public interest is best explained by the district court in *Del Rio*. On the one hand,

> [t]here is a significant interest in open judicial proceedings even in ordinary civil litigation between private parties. Private civil suits, individually and certainly in the aggregate, do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms. Further, where individual defendants are sued based not on abstract challenges to public policies but rather with regard to particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication. . . . Moreover, concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses. Where the defendants' identities are known, but not the plaintiffs', information about only one side may come to light.

241 F.R.D. at 159 (citations omitted). On the other hand,

> it is in the public interest that the price of access to the courts not be too high. Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued. The value of open proceedings disappears when there are no proceedings to be had.

*Id.* at 158. Thus, at bottom, "while this interest is significant enough in itself to create a presumption in favor of disclosure, certain factors might affect the weight of the interest in openness in particular cases." *Id.*

In this case, Plaintiff argues that the public interest will not be furthered by revealing his identity because doing so would hinder and potentially chill other victims of human trafficking from coming forward. Doc. 4 at 7. Specifically, he claims that "[t]he significant power disparity that exists between consular officials and their domestic workers makes it especially difficult for workers to come forward as victims of human trafficking," and he believes that requiring disclosure of his identity "would create a strong deterrence for similar victims seeking

11

retribution." *Id.* The Court is unconvinced. For one thing, continued anonymity would not mitigate the effects of the power disparity felt by Plaintiff here because, as conceded by him, Defendants already know his real identity. Likewise, a chilling effect will *always* exist in cases where aggrieved domestic workers are easily identifiable by consular officials. Thus, insofar as the risk of reprisals by the officials serve to deter those workers, that risk is not mitigated by allowing those workers to prosecute their actions anonymously.

Plaintiff also argues that the public interest will not be hindered by identifying Plaintiff as "John Doe" because there is little public interest in knowing Plaintiff's real name. Doc. 4 at 7. Yet, in light of the passages cited above, *see Del Rio*, 241 F.R.D. at 159, the Court cannot agree.

**F.     There may be some prejudice to Defendants in Plaintiff's continued anonymity.**

Finally, Plaintiff argues that Defendants will not suffer prejudice resulting from his continued anonymity in this action because they already know his real identity.

It is true that courts generally express concern that defendants may be prejudiced at various stages of the litigation when a plaintiff's identity is *unknown* to the defendants. *See Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999). However, even where a plaintiff's true identity is *known* to the defendants, as is the case here, the defendants may still be prejudiced. For instance, at the trial stage, "[a] witness who proceeds under her own name and is subject to potentially rigorous cross-examination may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account." *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016). Likewise, in evaluating a plaintiff's credibility, a jury (and the public) benefits from the "deeper inquiry" into a plaintiff's background that may prove difficult absent the plaintiff's name. *See id.* Moreover, some courts have noted that allowing plaintiffs to proceed anonymously tend to place defendants at a "genuine disadvantage, particularly when it comes to settlement leverage," as a plaintiff may

12

hold out for a larger settlement when the plaintiff knows that the defendant faces reputational risk not reciprocated by the plaintiff. *See Doe v. Fedcap Rehab. Servs.*, *Inc.*, No. 17 Civ. 8220 (JPO), 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018). And others have considered the general "damage to a defendant's reputation caused by the anonymous proceedings," and have concluded that allowing a plaintiff to make "accusations from behind a cloak of anonymity" while defendants must fight the accusations publicly is, at the very least, somewhat prejudicial to defendants. *Doe v. Gong Xi Fa Cai, Inc.*, No. 19 Civ. 2678 (RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019) (citing *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996)). For these reasons, the Second Circuit has instructed district courts to consider "whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated," *Sealed Plaintiff* 537 F.3d at 190.

At this juncture, the Court is unconvinced that Defendants' knowledge of Plaintiff's identity alleviates *all* prejudice resulting from his continued anonymity. Fundamental principles of fairness suggest that when a case involves potentially damaging allegations, plaintiffs who publicly accuse defendants of misconduct in civil suits should sue under their real names. *See Doe v. Solera Capital LLC*, No. 18 Civ. 1769 (ER), 2019 WL 1437520, at *6 (S.D.N.Y. Mar. 31, 2019). Consequently, given the allegations in Plaintiff's complaint, the Court finds that there is, at minimum, slight prejudice to Defendants in granting Plaintiff continued anonymity.

### G. No other factors outside of those listed in *Sealed Plaintiff* are relevant here.

Plaintiff has not pressed for consideration of any other factors outside of those articulated in *Sealed Plaintiff*. Likewise, the Court is unaware of any other factor material to its consideration of the propriety of allowing continued anonymity to Plaintiff in this case.

* * *

Upon consideration of all the factors outlined above, the Court concludes that Plaintiff's interest in proceeding anonymously does not outweigh the countervailing interests in full disclosure. Hence, Plaintiff's motion to proceed using a pseudonym will be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed anonymously is DENIED.

**<u>Plaintiff may file an amended complaint with the Court using his real name in the caption by August 31, 2019</u>**. Failure to amend the complaint in accordance with the instructions provided (or, in the alternative, to dismiss the complaint voluntarily) shall result in the Court's dismissal of the complaint without prejudice. Summonses shall not issue absent amendment in accordance with the instructions provided. The Clerk of Court is respectfully directed to terminate the motion—Doc. 3.

It is SO ORDERED.

Dated: August 6, 2019
       New York, New York

_____
Edgardo Ramos, U.S.D.J.